FILED
United States Court of Appeals
Tenth Circuit

February 13, 2026

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UHS OF DELAWARE, INC., d/b/a
Cedar Springs Hospital, Inc.,

    Petitioner,

v.

OCCUPATIONAL HEALTH AND
SAFETY REVIEW COMMISSION;
UNITED STATES DEPARTMENT
OF LABOR,

    Respondents.

No. 24-9521

_____

**PETITION FOR REVIEW FROM AN ORDER OF THE
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION**

_____

Kip Adams (Patricia B. Gary, with him on the briefs), Lewis, Brisbois, Bisgaard & Smith LLP, Boston, MA, for Petitioner.

Leigh Anne Schriever, Attorney (Seema Nanda, Solicitor of Labor, Edmund C. Baird, Associate Solicitor of Labor for Occupational Safety and Health, and Louise McGauley Betts, Counsel for Appellate Litigation, with her on the briefs), U.S. Department of Labor, Office of the Solicitor, Washington, D.C., for Respondents.

_____

Before **TYMKOVICH**, **BACHARACH**, **PHILLIPS**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal concerns the relationship between the owner of a psychiatric hospital (Cedar Springs Hospital, Inc.) and a management company (UHS of Delaware, Inc.). The relationship led to administrative penalties against the owner and management company for failing to provide adequate safety measures at a psychiatric hospital. 29 U.S.C. § 654(a)(1). The issue here is whether the relationship subjected the management company to the penalties.

**The government's burden**

The government answers *yes* and bears the burden of proof. *UHS of Delaware, Inc. v. Sec'y of Labor*, 140 F.4th 1329, 1336 (11th Cir. 2025). To determine whether the government satisfied its burden, the Occupational Safety and Health Review Commission considers three questions:

1.   Do the companies share a common worksite?

2.   Were the two companies integrated in matters of operations, safety, and health?

3.   Did the two companies share responsibility through a common president, management, supervision, or ownership?

*See Sec'y of Labor v. UHS of Westwood Pembroke, Inc.*, 2022 O.S.H.D. (CCH) P 33872, 2022 WL 774272, at *2 (Occup. Safety & Health Rev.

Comm'n Mar. 3, 2022). The parties agree on the use of this test,[1] so we assume for the sake of argument that this test was correct. *See Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1265 n.2 (10th Cir. 2004) (assuming, without deciding, that a test was correct when the parties agreed on it); *see also UHS of Delaware, Inc. v. Sec'y of Labor*, 140 F.4th 1329, 1336 n.1 (11th Cir. 2025) (declining to consider whether this test was correct when the parties did not raise the issue); *UHS of Westwood Pembroke Inc. v. Occup. Safety & Health Rev. Comm'n*, No. 22-1845, 2023 WL 3243988, at *1 (3d Cir. May 4, 2023) (unpublished) (applying the same test).[2]

The three questions are mainly factual. *NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 551 (3d Cir. 1983). For these fact-based questions, the Review Commission answered *yes* and found that UHS of Delaware had acted as an

---

[1]    The Review Commission refers to these questions sometimes as *elements* and sometimes as *factors*. *See Sec'y of Labor v. Altor*, 2011 O.S.H.D. (CCH) P 33135, 2011 WL 1682629, at *5 (Occup. Safety & Health Rev. Comm'n Apr. 29, 2011) (elements); *Sec'y of Labor v. FreightCar Am., Inc.*, 2021 WL 2311871, at *5 (Occup. Safety & Health Rev. Comm'n Mar. 3, 2021) (factors). In this case, however, all parties refer to these questions as *elements*. But the Review Commission answered *yes* to all three questions. So we need not decide whether the questions involve elements or factors.

[2]    UHS of Delaware cites numerous opinions by the Review Commission. We consider the weight of these opinions based on their thoroughness, consistency, and persuasiveness. *Lemus-Escobar v. Bondi*, 140 F.4th 1079, 1095 (10th Cir. 2025). In most instances, UHS of Delaware cites the Review Commission's opinions without discussing their thoroughness, consistency, or persuasiveness.

employer for some of the employees assigned to work at the psychiatric hospital.

UHS of Delaware challenges this finding.[3] To review this challenge, we consider whether the Review Commission had substantial evidence for the findings. 29 U.S.C. § 660(a).[4] Evidence is *substantial* if it could provide reasonable support for an agency's finding. *Slingluff v. Occup. Safety & Health Rev. Comm'n*, 425 F.3d 861, 866 (10th Cir. 2005). So we consider the evidence bearing on each question.

**The first question**

The first question is whether the psychiatric hospital was a *worksite* for UHS of Delaware. The term *worksite* ordinarily refers to the place where the work is performed. *See Harbert v. Healthcare Servs. Grp., Inc.*, 391 F.3d 1140, 1149 (10th Cir. 2004) (stating that "the common understanding of the term 'worksite' is the site where the employee

---

[3]    Cedar Springs Hospital, Inc. joins UHS of Delaware's arguments. Brief of Petitioner Cedar Springs Hospital, Inc. at 2 n.1, *Cedar Springs Hospital, Inc. v. Occupational Safety & Health Rev. Comm'n*, Case No. 24-9519 (10th Cir. filed Nov. 4, 2024).

[4]    UHS of Delaware argues that the Review Commission failed to view the facts in context and disregarded OSHA's effort to inject itself as a "key player in the healthcare regulatory field." Reply Br. for Petitioner, UHS of Delaware, Inc. at 26. Regardless of whether the Review Commission viewed the facts in context, we have done so. In viewing these facts, however, we are constrained by the standard of substantial evidence. If the evidence is substantial, we must deny the petition for judicial review regardless of whether OSHA is trying to magnify its role in the regulation of healthcare.

4

works"). Given the ordinary meaning of the term, factfinders could disagree on how to characterize UHS of Delaware's relationship to the psychiatric hospital.

The government views the psychiatric hospital as a worksite of UHS of Delaware because three UHS employees are to work there as chief executive officer, chief financial officer, and chief operating officer. On the other hand, UHS of Delaware characterizes the psychiatric hospital solely as a worksite of Cedar Springs Hospital, Inc.

UHS of Delaware's characterization is reasonable, but so is the government's. After all, UHS of Delaware promised to assign three of its employees to work as executives at the psychiatric hospital. *See* Mark A. Rothstein, *Occupational Safety & Health Law* 6:4 (Mar. 2025 update) ("Any workplace where at least one of the cited employer's employees is working will be considered a place of employment.").

UHS of Delaware points out that

- its headquarters are in Pennsylvania and the psychiatric hospital is in Colorado and

- the UHS of Delaware employees serving on the board of Cedar Springs were not also serving as executives for UHS of Delaware itself.

But the worksite could be *common* for both companies even if UHS of Delaware's employees serve as executives of Cedar Springs Hospital, Inc. without occupying similar roles in UHS of Delaware. *UHS of Delaware,*

5

*Inc. v. Sec'y of Labor*, 140 F.4th 1329, 1336 (11th Cir. 2025). And we consider the commonality of the worksite by focusing on where the employees faced workplace hazards rather than where the employer had its headquarters. *Id.*; *A.C. Castle Constr. Co. v. Acosta*, 882 F.3d 34, 42 (1st Cir. 2018).

With this focus, a factfinder could reasonably view the psychiatric hospital as the place where UHS of Delaware's employees had faced the danger. In fact, the parties stipulated that UHS of Delaware's employees had faced exposure to workplace violence at the psychiatric hospital. R. vol. 16, at 69 (Stipulation No. 8, filed Jan. 28, 2022).[5]

In addition to the stipulation, an employee of UHS of Delaware testified that he had served as the chief financial officer of the psychiatric hospital and interacted with patients in weekly visits to the acute units.

---

[5]    UHS of Delaware asserts that "[t]here is no evidence suggesting that [an employee of UHS of Delaware] was exposed to the hazard." Br. for the Petitioner, UHS of Delaware, Inc. at 39. But the parties stipulated that UHS of Delaware's employees had been exposed to workplace violence, and the court can't require evidence to support a stipulated fact. R. vol. 16, at 69 (Stipulation No. 8, filed Jan. 28, 2022) (stipulating that "[UHS of Delaware's] employees are exposed to the hazard of workplace violence, defined in this case as physical threats and assaults by patients toward staff"); *see also United States v. Sommers*, 351 F.2d 354, 357 (10th Cir. 1965) ("The trial court may not disregard the facts stipulated to by the parties or require evidence to support them.").

R. vol. 6, at 177.[6] Other employees of UHS of Delaware also visited the psychiatric hospital as part of their jobs. For example, six UHS of Delaware employees visited the psychiatric hospital in 2019. R. vol. 16, at 72 (Stipulation No. 42, filed Jan. 28, 2022). One of these employees was UHS of Delaware's Divisional Director of Clinical Services, who visited the hospital nine times (sometimes for two to three days). *Id.*

From the evidence of these visits, a reasonable factfinder could infer exposure of UHS of Delaware's employees to the hazard of workplace violence; and this exposure would support the Review Commission's characterization of the psychiatric hospital as a workplace of UHS of Delaware. *See UHS of Delaware, Inc. v. Sec'y of Labor*, 140 F.4th 1329, 1336 (11th Cir. 2025) (concluding that this issue was resolved by UHS of Delaware's exposure of two of its employees—the chief executive officer and the chief operating officer in training—to the hazard of workplace violence).

---

[6]     UHS of Delaware asserts that "there is no evidence that the [chief financial officer] . . . interacts with patients." Reply Br. for the Petitioner, UHS of Delaware, Inc. at 10. But the chief financial officer testified that he had interacted with patients. R. vol. 6, at 177. And UHS of Delaware stipulated that its "employees at the worksite" had been exposed to workplace violence. R. vol. 16, at 69 (Stipulation No. 8, filed Jan. 28, 2022). We thus reject UHS of Delaware's denial of evidence involving the chief financial officer's interaction with patients.

UHS of Delaware points out that most of the work fell to employees of Cedar Springs Hospital, Inc. But some of the supervision came from employees of UHS of Delaware. *See id.* (observing that companies may share a common worksite when one provides labor and another provides supervision). For example, UHS of Delaware's employees served as the psychiatric hospital's chief executive officer,[7] chief financial officer, and chief operating officer.

The evidence on this question thus conflicts. But the evidence was enough for the Review Commission to treat the worksite as one shared by UHS of Delaware and Cedar Springs Hospital, Inc.

**The second question**

The second question is whether the two companies integrated their operations for safety and health. This question addresses the management company's exercise of authority over matters involving employee safety. *See UHS of Delaware, Inc. v. Sec'y of Labor*, 140 F.4th 1329, 1337 (11th Cir. 2025); *A.C. Castle Constr. Co. v. Acosta*, 882 F.3d 34, 42–43 (1st Cir. 2018). Relevant considerations include the mechanisms to fund and develop safety training, the enforcement of safety policies, and the evaluation and adaptation of safety policies. *See UHS of Delaware*, 140 F.4th at 1337; *A.C. Castle Constr. Co.*, 882 F.3d at 42–43.

---

[7]    The chief executive officer supervised the psychiatric hospital's directors of nursing and risk management. R. vol. 6, at 112–14.

UHS of Delaware argues that sharing resources did not constitute integration and interrelation of operations, especially because UHS of Delaware employees did not provide patient care. But integration may exist even if the companies provide different services affecting health and safety. And UHS of Delaware agreed not only to share resources, but also to provide oversight on safety matters. R. vol. 10, Secretary of Labor's Exh. C-84, at 1–4. Through this oversight, UHS of Delaware required the psychiatric hospital's staff members to attend courses on workplace violence, provided forms to report incidents of workplace violence, compiled data on trends involving injuries to staff members, and reviewed and approved the psychiatric hospital's plan to address workplace violence. *See* R. vol. 10, Secretary of Labor's Exh. C-82; R. vol. 1, at 123–24; R. vol. 4, at 30–31; R. vol. 10, Secretary of Labor's Exhs. C-27, C–28, C-47; R. vol. 6, at 9–10, 50–52, 64–66.

Addressing these responsibilities, an employee of UHS of Delaware testified that he had provided daily oversight of the various departmental directors and shouldered the responsibility to ensure safety. R. vol. 6, at 112–14. In addition, the parties stipulated that this individual had supervised the medical director and the directors of risk management, nursing, clinical services, admissions and referrals, human resources, and plant operations. R. vol. 16, at 70 (Stipulation No. 25, filed Jan. 28, 2022).

The testimony again conflicts, but the evidence was enough for the Review Commission to find integration of safety matters between UHS of Delaware and Cedar Springs Hospital, Inc. *See UHS of Delaware, Inc. v. Sec'y of Labor*, 140 F.4th 1329, 1337 (11th Cir. 2025) (rejecting a similar argument by UHS of Delaware based on its discussion of safety issues with the owner of a psychiatric hospital and submission of safety documents); *see also A.C. Castle Constr. Co. v. Acosta*, 882 F.3d 34, 42–43 (1st Cir. 2018) (concluding that the integration of safety operations was supported by the payment for another company's safety training and the preparation of safety policies).

**The third question**

The third question is whether the companies had a "common president, management, supervision, or ownership." *Sec'y of Labor v. UHS of Westwood Pembroke, Inc.*, 2022 O.S.H.D. (CCH) P 33872, 2022 WL 774272, at *2 (Occup. Safety & Health Rev. Comm'n Mar. 3, 2022); *see* pp. 2–3 & n.1, above. The test is disjunctive, so the government needed only to show that Cedar Springs Hospital, Inc. and UHS of Delaware had shared

- a president,
- management,
- supervision, or

- ownership.

*See United States v. Woods*, 571 U.S. 31, 45 (2013) (stating that the conjunction *or* "is almost always disjunctive").

UHS of Delaware contends that it didn't share a president, management, or supervision with Cedar Springs Hospital, Inc. For the sake of argument, we can assume that UHS of Delaware is right. Even so, UHS of Delaware doesn't deny common ownership with Cedar Springs Hospital, Inc.

For the question of common ownership, both UHS of Delaware and Cedar Springs Hospital, Inc. state that they're "wholly owned subsidiar[ies] of Universal Health Services, Inc." Br. of Petitioner, UHS of Delaware, Inc. at 2; Br. of Petitioner Cedar Springs Hosp., Inc. at 1, *Cedar Springs Hosp., Inc. v. Occup. Safety & Health Rev. Comm'n*, Case No. 24-9519 (10th Cir. Nov. 1, 2024). This representation appears correct because the same entity (Universal Health Services, Inc.) served as the ultimate owner of both UHS of Delaware, Inc. and Cedar Springs Hospital, Inc. The only difference was that an intermediary (Psychiatric Solutions Hospital, Inc.) occupied a middle tier between Universal Health Services, Inc. and Cedar Springs Hospital, Inc.

11



A similar ownership structure appeared in *UHS of Delaware Inc. v. Sec'y of Labor*, 140 F.4th 1329, 1332 (11th Cir. 2025). There Suncoast Behavioral Center had run a psychiatric hospital, and the issue was whether this entity had shared ownership with UHS of Delaware. *Id.* at 1332, 1335–36. For this issue, the Eleventh Circuit concluded that Suncoast and Universal Health of Delaware had common ownership because they shared the same ultimate parent: Universal Health Services, Inc. *Id.* at 1337. There too, Psychiatric Solutions Hospital, Inc. occupied a rung between Universal Health Services, Inc. and the owner of the psychiatric hospital (Suncoast). In fact, another entity (Premier Behavioral Solutions, Inc.) stood between Psychiatric Solutions and the owner of the psychiatric hospital. *Id.*



The chain of ownership, however, didn't matter because the owner of the psychiatric hospital and UHS of Delaware had the same "ultimate parent company": Universal Health Services, Inc. *Id.* The same is true here.

* * *

Given the existence of substantial evidence for the Review Commission's findings on the three questions, we deny UHS of Delaware's petition for review.