Mark J. ABRAMS, Plaintiff–Appellant,

v.

CITY OF RANCHO PALOS VERDES, a Municipality; City of Rancho Palos Verdes City Council, Defendants–Appellees,

and

Frank Lyon; Jon Cartwright; Thomas Long; Craig Mueller; Theodore Paulson; Donald Vannorsdall; John McTaggart; Douglas W. Stern; Lee Byrd; Barbara Ferraro; Marilyn Lyon; and Larry Clark, Defendants.

No. 02–55681.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2003.

Filed Jan. 15, 2004.

Wilkie Cheong, Cheong, Denove, Rowell, & Bennett, Los Angeles, CA, for the plaintiff-appellant.

Carol W. Lynch, City Attorney, City of Rancho Palos Verdes, T. Peter Pierce and Gregory M. Kunert, Richards, Watson, and Gershon, Los Angeles, CA, for the defendants-appellees.

Before: KOZINSKI and T.G. NELSON, Circuit Judges, and JANE A. RESTANI,* Judge.

T.G. NELSON, Circuit Judge.

Mark J. Abrams appeals the district court's denial of § 1983[1] damages. The district court found that the City of Rancho Palos Verdes ("City") violated Abrams' rights under the Telecommunications Act of 1996 ("TCA"). Nonetheless, the court concluded that Congress intended the TCA to provide a comprehensive remedial scheme, thus barring additional remedies under § 1983. We disagree. Section 1983 remedies are available because the TCA does not contain a comprehensive remedial scheme. Therefore, we reverse and remand to the district court.

## I. BACKGROUND

Abrams is a Federal Communications Commission ("FCC") licensed, amateur radio operator. He also provides commercial, mobile radio services (otherwise known as personal wireless services) from his home. In 1989, the City issued Abrams a permit to construct an antenna on his property for his amateur use.[2]

---

* The Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

1. 42 U.S.C. § 1983.

2. Although the City's policy limits antennas to a height of 40 feet, the inspector approved Abrams' plan to build a 52.5–foot antenna.

Abrams used his antenna for both amateur and commercial purposes.

Ten years later, the City learned of Abrams' unauthorized commercial use. The City obtained an injunction preventing Abrams from using his antenna for commercial purposes until he obtained a conditional use permit ("CUP"). However, when Abrams applied for the CUP, the City denied it.

Abrams filed the present action, claiming that the City violated his rights under the TCA. Invoking § 1983, Abrams sought declaratory relief, injunctive relief, damages, attorney's fees, and costs. The district court agreed with Abrams and found that the City did not have a valid reason to deny Abrams a CUP, and ordered the City to grant Abrams' permit. However, the district court concluded that the TCA subsumed all of Abrams' remedies. Thus, the court declined his request for damages, attorney's fees, and costs. Abrams appealed.

## II.  ANALYSIS

The parties do not dispute the facts in this case. Therefore, the only question before us is whether the TCA contains a comprehensive remedial scheme, evincing Congress's intent to preclude remedies under § 1983.[3] The Ninth Circuit has never answered this question.

■■■ We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's statutory interpretation of § 1983 and the TCA.[4]

---

**3.**  Abrams has conceded all state-law claims that he initially raised in this appeal.

**4.**  *Sea–Land Serv., Inc. v. Lozen Intern.*, 285 F.3d 808, 813 (9th Cir.2002).

**5.**  42 U.S.C. § 1983.

**6.**  *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

A.  *Section 1983*

Section 1983 is a remedial provision.  It provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .[5]

To obtain remedies pursuant to § 1983, a plaintiff must first establish a federal "right."[6]  Once a plaintiff satisfies the initial burden of proving he has a federal statutory right, he creates a rebuttable presumption that he is entitled to § 1983 remedies.[7]  The parties do not dispute the fact that the TCA clearly grants enforceable "rights."[8]  Thus, the only question in this case is whether the City can rebut the presumption that Congress intended § 1983 remedies to be available for TCA violations.

The City can rebut the presumption in favor of § 1983 remedies if it can prove that Congress either expressly or impliedly foreclosed § 1983 remedies.[9]  The TCA's language provides no support for the theory that Congress expressly foreclosed § 1983.  Thus, the question further narrows to whether Congress impliedly foreclosed § 1983 remedies.

■■■ Congress impliedly forecloses § 1983 remedies when it "creat[es] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."[10]  However, the existence of

---

**7.**  *Id.* at 341, 117 S.Ct. 1353.

**8.**  *Id.* at 340–41, 117 S.Ct. 1353.

**9.**  *Id.* at 341, 117 S.Ct. 1353.

**10.**  *Id.*

administrative mechanisms to safeguard an individual's interests does not evince the requisite congressional intent.[11] In other words, it is not enough that Congress provides procedures by which a plaintiff can enforce his rights under a statute.[12] The City must prove that through the remedies Congress provided in the TCA, it intended to "close the door on § 1983 liability."[13] We hold that the City has not met this burden.

## B. *The TCA*

Congress enacted the TCA to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies."[14] The TCA requires that state and local governments support any denial of "a request to place, construct, or modify personal wireless service facilities ... in writing ... [with] substantial evidence contained in a written record."[15] The TCA also provides that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

> Any person adversely affected by an act or failure to act by a State or local government ... may petition the Commission for relief.[16]

Thus, the TCA does not explicitly provide for any types of remedies such as damages, injunctions, attorney's fees, or costs. Rather, the TCA only provides a short statute of limitations (30 days), expedited judicial review, and avenues through which a plaintiff can redress TCA violations (an action in any court of competent jurisdiction and permissive ability to petition the Commission). The question is whether the TCA's provisions are so comprehensive that they close the door on § 1983 liability.

## C. *The TCA Does Not Contain a Comprehensive Remedial Scheme*

In the case before us, the TCA provides for a private right of action by allowing aggrieved plaintiffs the right to bring an action in any court of competent jurisdiction, and before the Commission. However, the statute grants no remedies beyond procedural rights. The procedural provisions are insufficient for us to conclude that the TCA contains a comprehensive remedial scheme that closes the door on § 1983 liability.

The cases in which courts have found that Congress implied its intent to foreclose resort to § 1983 remedies presented remedial schemes more comprehensive

---

11. *Id.* at 347, 117 S.Ct. 1353.

12. *See Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 424, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (holding that "the administrative scheme of enforcement" did not foreclose other remedies); *id.* at 425, 107 S.Ct. 766 (requiring remedial scheme "to raise a clear inference that Congress intended to foreclose a § 1983 cause of action"); *id.* at 427, 107 S.Ct. 766 (distinguishing cases involving other statutes that provide private judicial remedies, evincing congressional intent to foreclose § 1983 remedies).

13. *Blessing*, 520 U.S. at 348, 117 S.Ct. 1353; *see also Wright*, 479 U.S. at 423–24, 107 S.Ct. 766 ("We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." (internal quotation marks omitted)).

14. Pub.L. No. 104–104, 110 Stat. 56 (1996).

15. 47 U.S.C. § 332(c)(7)(B)(iii).

16. *Id.* § 332(c)(7)(B)(v).

than, and thus distinguishable from, the TCA. In *Middlesex County Sewerage Authority v. National Sea Clammers Association*,[17] the Supreme Court held that Congress impliedly foreclosed § 1983 remedies because the two rights-creating statutes at issue had "unusually elaborate enforcement provisions."[18] The statutes permitted civil penalties,[19] litigation costs,[20] injunctive relief,[21] and suspensions or revocations.[22] Therefore, the Court concluded that "Congress provided precisely the remedies it considered appropriate" and refused to read more into it.[23]

In *Department of Education v. Katherine D.*,[24] we held that the underlying statute was sufficiently comprehensive so as to evince Congress's intent to foreclose § 1983 remedies. The underlying statute established an elaborate procedural scheme and provided the reviewing court with authority to grant appropriate relief.[25] This court held that the rights granting statute's "complex provisions . . . create a comprehensive and exclusive remedial scheme that precludes reliance upon a cause of action under section 1983."[26]

The TCA differs from both the statutes in *Sea Clammers* and the statute in *Katherine D.* because the TCA does not provide for any type of relief. While one may argue that the lack of any damages in the TCA is evidence that Congress impliedly intended to foreclose damages, a better justification for the absence of a remedial provision is that Congress intended to preserve an aggrieved plaintiff's right to invoke § 1983. An implied preservation is consistent with the presumption in favor of § 1983 remedies.[27] Thus, in this case, where the TCA contains no remedies at all, we must conclude that Congress did not intend to foreclose § 1983 remedies.

When faced with the same question before us, the Third Circuit in *Nextel Partners Inc. v. Kingston Township*[28] held that the TCA was incompatible with § 1983 and thus foreclosed its remedies.[29] The *Nextel* court concluded that the TCA contained a comprehensive remedial scheme because of its short statute of limitations, expedited review, and judicial jurisdictional provisions.[30] The court also concluded that § 1983 and the TCA were incompatible because § 1983 permits attorney's fees, whereas the TCA does not.[31] Moreover,

---

**17.** 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

**18.** *Id.* at 13, 101 S.Ct. 2615.

**19.** 33 U.S.C. § 1415(d).

**20.** 33 U.S.C. § 1365(d).

**21.** 33 U.S.C. § 1415(d).

**22.** 33 U.S.C. § 1415(f).

**23.** *Sea Clammers*, 453 U.S. at 15, 101 S.Ct. 2615.

**24.** 727 F.2d 809 (9th Cir.1983).

**25.** 20 U.S.C. § 1415(I)(2), (3).

**26.** *Katherine D.*, 727 F.2d at 820.

**27.** *Buckley v. City of Redding*, 66 F.3d 188, 192–193 (9th Cir.1995). In *Buckley*, we held that an enforcement mechanism was insufficient to overcome the presumption for § 1983 remedies. *Id.* at 193. The court said: "To preclude enforcement under section 1983, the Act's remedial scheme must be so comprehensive as to leave no room for additional private remedies." *Id.* at 192–93 (citing *Suter v. Artist M.*, 503 U.S. 347, 360 n. 11, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992)). Our language leaves room for a statute to provide some private remedies without entirely foreclosing § 1983 remedies.

**28.** 286 F.3d 687 (3d Cir.2002).

**29.** *Id.* at 695.

**30.** *Id.* at 694–95.

**31.** *Id.* at 695.

§ 1983 has a longer limitations period and does not contain any provision for expeditious reviews.[32] Thus, the Third Circuit concluded that § 1983 remedies could not be granted without upsetting the TCA's remedial scheme, and it held that Congress impliedly foreclosed § 1983 remedies.[33]

The Third Circuit's reasoning is flawed in several respects. First, the TCA's provisions are not remedial. We can hardly consider the limitations period a remedy. Shortening the limitations period to thirty days imposes a burden on an aggrieved plaintiff, not a benefit. The TCA's provision allowing a plaintiff to "commence an action in any court of competent jurisdiction" is hollow as well. The only benefit to an aggrieved plaintiff is expedited judicial review. However, an expedited decision does nothing to remedy a TCA violation in itself. Significantly, a court can fully comply with all of the TCA's provisions before it determines liability. Thus, the TCA contains *procedural*, rather than *remedial*, provisions.

Second, the TCA's provisions are compatible with § 1983's remedies. As we said, the TCA's provisions are procedural in nature—not remedial. Congress can limit the time in which a plaintiff can file for relief, and require an expeditious review in any court of competent jurisdiction, without inadvertently limiting the plaintiff's remedies at the same time. Were we to consider the TCA's procedural provisions sufficiently comprehensive to foreclose § 1983 remedies, we would prevent Congress from ever providing statutes of limitations or other procedural provisions

without also defining specific remedies. Such a holding would unnecessarily limit § 1983 remedies to those generic statutes that grant a right and nothing else. We decline to take that path. The TCA's procedural provisions are compatible with § 1983's remedial provisions.

Finally, the Third Circuit's reasoning is contrary to Ninth Circuit precedent in *Keaukaha–Panaewa Community Association v. Hawaiian Homes Commission*.[34] *Keaukaha–Panaewa*, we applied the strong presumption in favor of § 1983 remedies. The underlying statute granted one public remedy. We nonetheless concluded that the rights-granting statute did not contain a comprehensive remedial scheme.[35] The TCA contains no remedial provisions, let alone a comprehensive remedial scheme. Thus, we depart from the Third Circuit and hold that Congress did not impliedly foreclose § 1983's remedial provisions.

### D. The TCA Confirms Congress's Affirmative Intent to Preserve Section 1983 Remedies

■ We further note that Congress did not simply refrain from foreclosing § 1983 remedies by implication. To the contrary, Congress actually affirmed its contrary intent in § 601(c)(1) of the TCA:

No implied effect.—This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, state, or local law unless expressly so provided in such Act or amendments.[36]

---

**32.** *Id.*

**33.** *Id.* at 696. *But see Omnipoint Holdings, Inc. v. Town of Westford,* 206 F.Supp.2d 166, 173–74 (D.Mass.2002) (holding that the TCA contains only substantive, not remedial, provisions and thus allows § 1983 remedies).

**34.** 739 F.2d 1467 (9th Cir.1984).

**35.** *Id.* at 1471.

**36.** Pub.L. No. 104–104, § 601, 110 Stat. 143 (1996), *reprinted in* 47 U.S.C. § 152, historical and statutory notes.

As the Eleventh Circuit explained in its vacated decision *AT & T Wireless PCS, Inc. v. City of Atlanta*,[37] the plain language of § 601(c)(1) demonstrates that Congress did not intend the TCA to alter the operation of any federal law unless the TCA expressly provided for such change.[38] Section 1983 clearly falls within the parameters of this general savings clause.[39]

Certainly, Congress could have been more specific in addressing the preservation of § 1983 remedies. In addition to enacting § 601(c)(1), Congress preserved state and local tax laws in § 601(c)(2) and provided in § 601(b)(1) that the TCA would not alter the applicability of antitrust laws. But, as the Eleventh Circuit observed, Congress was not required to be any more specific than it was in § 601(c)(1).[40] The import and scope of the general savings clause's language are clear.

The Supreme Court has held in other instances that savings clauses did not provide evidence of Congress's intent to preserve § 1983 remedies. In *Sea Clammers*, the Court concluded that the Federal Water Pollution Control Act ("FWPCA")[41] and Marine Protection, Research, and Sanctuaries Act of 1972 ("MPRSA"), codified in scattered sections of 33 U.S.C., impliedly foreclosed § 1983 remedies.[42] The Court then held that the statutes' savings clauses did not indicate that Congress had intended to preserve recourse to

§ 1983.[43] The FWPCA savings clause provided:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).[44]

The MPRSA savings clause provided:

> The injunctive relief provided by this subsection shall not restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or limitation or to seek any other relief (including relief against the Administrator, the Secretary, or a State agency).[45]

The Court reasoned that these savings clauses were intended to preserve plaintiffs' rights to sue to enforce "anti-pollution standards arising under *other* statutes or state common law,"[46]—that is, substantive rights independent of those created by the FWPCA and MPRSA. Because § 1983 does not itself confer substantive rights but "merely provides a mechanism for enforcing individual rights 'secured' elsewhere,"[47] this was quite different from an intent to preserve a cause of action under § 1983, based on the very substantive rights created by the FWPCA and MPRSA.[48]

---

**37.** 210 F.3d 1322 (11th Cir.2000), *vacated on rehearing en banc by* 260 F.3d 1320 (11th Cir.2001).

**38.** *Id.* at 1328.

**39.** *Id.*

**40.** *Id.* at 1329–30.

**41.** 33 U.S.C. §§ 1251–1387.

**42.** *Sea Clammers*, 453 U.S. at 21, 101 S.Ct. 2615.

**43.** *Id.* at 20 n. 31, 101 S.Ct. 2615.

**44.** *Id.* at 7 n. 10, 101 S.Ct. 2615 (quoting 33 U.S.C. § 1365(e)) (citation omitted).

**45.** *Id.* at 7 n. 11, 101 S.Ct. 2615 (quoting 33 U.S.C. § 1415(g)(5)) (citation omitted).

**46.** *Id.* at 10 n. 31, 101 S.Ct. 2615.

**47.** *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

**48.** *See Sea Clammers*, 453 U.S. at 10 n. 31.

As the Eleventh Circuit reasoned, the TCA's savings clause is distinguishable from the FWPCA's and MPRSA's savings clauses. The TCA's general savings clause forbids the impairment of any federal "law"—not the impairment of any "right." Thus, the TCA's general savings clause sweeps more broadly than those the Supreme Court evaluated in *Sea Clammers* and includes § 1983 within its ambit.

In sum, we are persuaded by the Eleventh Circuit's reasoning. While our analysis that Congress did not foreclose resort to § 1983 by implication is sufficient on its own, we further hold that Congress, by enacting § 601(c)(1) of the TCA, indicated its affirmative intent to preserve § 1983 remedies.

### III. CONCLUSION

The City failed to rebut the presumption in favor of § 1983 remedies. Accordingly, the presumption applies, and the district court should award § 1983 damages.[49]

REVERSED AND REMANDED.

---

**49.** Our holding makes it unnecessary to address Abrams' argument that, regardless of whether § 1983 remedies are available under the TCA, he could still have recovered attorney's fees under § 1988 for a due process violation.