RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0091p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

STATE OF TENNESSEE ex rel. WIRELESS INCOME
PROPERTIES, LLC,
                        *Plaintiff-Appellant,*

                    *v.*

CITY OF CHATTANOOGA and WILLIAM C. MCDONALD, in
his capacity as Administrator of Public Works,
                        *Defendants-Appellees.*

No. 03-6608

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 02-00372—R. Allan Edgar, Chief District Judge.

Argued: August 11, 2004

Decided and Filed: February 24, 2005

Before: SILER, MOORE, and COLE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** James T. Williams, MILLER & MARTIN, Chattanooga, Tennessee, for Appellant. Michael A. McMahan, OFFICE OF THE CITY ATTORNEY, Chattanooga, Tennessee, for Appellees. **ON BRIEF:** James T. Williams, MILLER & MARTIN, Chattanooga, Tennessee, Camden Ballard Scearce, Jr., HUSCH & EPPENBERGER, LLC, Chattanooga, Tennessee, for Appellant. Michael A. McMahan, OFFICE OF THE CITY ATTORNEY, Chattanooga, Tennessee, for Appellees.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Wireless Income Properties, LLC ("Wireless") appeals the decision of the district court, which granted in part and denied in part both its and Defendant-Appellee City of Chattanooga's ("City") respective motions for summary judgment. Wireless, a company engaged in the construction and management of telecommunications towers, filed applications with the City for permits to construct monopole communication towers. The City then called for a moratorium on the issuing of such permits to consider amendments to the pertinent zoning ordinances. After the moratorium was lifted, Wireless's applications no longer complied with the newly amended zoning ordinances. Wireless brought suit in federal court seeking mandamus relief requiring the City to issue the permits, and also asserting that the City had committed violations of the Telecommunications Act of 1996

1

("TCA") and 42 U.S.C. § 1983. Both sides filed motions for summary judgment, which the district court granted in part and denied in part. Among other things, the district court ordered the City to act on the pending applications within sixty days of the judgment.

Wireless makes three arguments on appeal: (1) the district court erred when it ordered the City to act upon Wireless's permit applications within sixty days of the judgment; (2) the district court erred when it held that the City was not required to apply the zoning ordinances in effect at the time Wireless filed its applications for building permits; and (3) the district court erred when it held that a violation of the TCA does not give rise to a cause of action under 42 U.S.C. § 1983.

For the reasons explained below, we **REVERSE** the district court's sixty-day order; instead the district court should issue appropriate injunctive relief compelling the City to grant Wireless the requested permits. Because we conclude that a § 1983 remedy is available for violations of the TCA, we **REVERSE** the district court's grant of summary judgment to the City on this issue and **REMAND** the case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Wireless constructs, owns, and manages telecommunications towers in the Southeastern United States. Between December 14, 2001 and January 15, 2002, Wireless filed seven Land Disturbing Activity Permit Applications ("applications") with the Public Works Department of the City, seeking approval for the construction of monopole communication towers. At the time each application was filed, Wireless or the company's principal, G. Larry Wells ("Wells"), either owned or leased the underlying property, or had an agreement with the owner of the property to file the applications. In addition, the property underlying each application conformed to the particular zoning ordinances then in effect.[1]

On January 15, 2002, the Chattanooga City Council ("City Council") passed a resolution which declared a moratorium on the issuance of building permits for communication towers in certain zones effective until March 13, 2002.[2] The purpose of the moratorium was "to allow [for] consideration of amendments to the provisions of the Zoning Ordinance for communication towers in [the cited] zones by the City Council," due to concern that the then-effective ordinances failed sufficiently to "protect the public welfare." Joint Appendix ("J.A.") at 112. A second resolution was passed on February 12, 2002, extending the moratorium until April 5, 2002.

On March 19, 2002, the City Council passed Ordinance No. 11253, which changed the standards for the location of communication towers. The changes were not to take effect until April 3, 2002. One of the changes was a new requirement mandating that all applications be approved by the Board of Appeals for Variances and Special Permits ("Variance Board").[3] On March 26, 2002, the City Council passed another resolution setting April 3, 2002 as the termination date of the moratorium.

As a result of the amendments to the zoning ordinances, all of Wireless's applications were rendered defective in various ways such that they did not qualify for issuance of the permits. Wireless asserts that

---

[1] Each of the properties "was zoned appropriately for the construction of a communications tower of the type and height as identified on each individual site plan attached to each of the Applications." Appellant's Br. at 6-7. Five of the properties were zoned C-2 (convenience commercial), one was zoned M-3 (warehouse and wholesale), and one was zoned M-1 (manufacturing). In addition, at the time of the filings, construction of monopole communication towers was designated a permitted use in these zones pursuant to the City's then-effective zoning ordinances.

[2] Wireless was aware of the impending moratorium and filed the last of its two applications on January 15, 2002.

[3] Wells was aware of this new requirement. In fact, he had attended and participated in some of the City Council Legal and Legislative Committee meetings on the subject.

the City never served it with any type of written documentation signaling either the approval or denial of its applications. The City concedes that its only communication with Wireless regarding the allegedly now-inadequate applications was a telephone call on March 20, 2002, between Perry Mayo ("Mayo"), the city employee primarily responsible for processing applications, and Wireless. During this phone call, Mayo informed Wireless that the applications could not be approved absent a "special exceptions permit." Appellees' Br. at 4; J.A. at 104-05 (Mayo Dep. at 37-38). Mayo believed that the applications were therefore "on hold" at this point, and accordingly, took no further action. J.A. at 104-05 (Mayo Dep. at 37-38). Wireless never took the steps necessary to cure the defects in its applications by satisfying the new requirements and taking the applications before the Variance Board.[4]

On December 10, 2002, Wireless filed suit in federal court against the City and William C. McDonald in his capacity as Administrator of Public Works, seeking mandamus relief "requiring the City to issue the requested permits, and asserted [that] the City had engaged in certain violations of the TCA, violations of 42 U.S.C. § 1983 and violations of Wireless' substantive due process rights." Appellant's Br. at 3. On February 6, 2003, Wireless filed a motion for partial summary judgment on the basis of the City's violations of the TCA, and requested a writ of mandamus that would force the City to issue the requested permits. The City filed a cross-motion for summary judgment on June 30, 2003, asking the court to conclude that it had committed no violations of the TCA, and asking that Wireless's claims be dismissed.

On October 20, 2003, the district court issued an opinion, granting in part and denying in part both of the motions for summary judgment. The court found that the City's failure to act upon Wireless's filed applications constituted a violation of the TCA and ordered the City either to grant or to deny the applications within sixty days from the date of judgment. The court also denied Wireless's motion to the extent that it asked the court "to compel the City to apply zoning laws in effect before April 3, 2002." J.A. at 168 (D. Ct. Op. at 12). Finally, regarding Wireless's § 1983 claim, the district court, after lengthy analysis, concluded that a violation of the TCA did not give rise to a cause of action under § 1983. Accordingly, the court granted summary judgment in favor of the City on this issue. Wireless filed a timely notice of appeal on November 18, 2003 from the district court's final judgment.

## II. ANALYSIS

### A. Standard of Review

This court reviews a grant of summary judgment de novo. *Walls v. Amerisure Mut. Ins. Co.*, 343 F.3d 881, 884 (6th Cir. 2003). "Although the denial of a motion for summary judgment is usually an interlocutory order that is not immediately appealable, where 'an appeal from a denial of summary judgment is presented in tandem with a grant of summary judgment, this court has jurisdiction to review the propriety of the district court's denial of summary judgment.'" *Id.* (quoting *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 235 (6th Cir. 2003)). While the denial of a motion for summary judgment "on purely legal grounds" is reviewed de novo, *id.*, a denial based on the finding of a genuine issue of material fact is reviewed for an abuse of discretion. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004). A grant of summary judgment is proper when, taking the facts in the light most favorable to the non-movant, there exists no genuine issue of material fact and "the moving party is entitled to a judgment as a matter of law." *Walls*, 343 F.3d at 884. Finally, the decision of a district court to grant injunctive relief is reviewed for abuse of discretion. *United States v. City of Detroit*, 329 F.3d 515, 520 (6th Cir. 2003) (en banc); *New Par v. City of Saginaw*, 301 F.3d 390, 394 (6th Cir. 2002).

---

[4]Wells asserted in his deposition that although he knew that his pending applications would be deficient after passage of the amendments to the ordinance, he did not amend the applications, as he thought that they would be grandfathered, i.e., that they would be approved under the old ordinance.

## B. Sixty-Day Order

On appeal Wireless contends that the district court erred when it ordered the City to either grant or deny Wireless's permit applications within sixty days. Specifically, Wireless contends that the proper remedy for the City's violations of the TCA would be to require the City to issue the requested permits. In response, the City contends that Wireless's claim is not ripe for review under the TCA. For the reasons set out below, we reject the City's ripeness claim and agree with Wireless that the district court erred in failing to require the City to issue the requested permits.

The TCA, codified at 47 U.S.C. § 332, provides in subsection (c)(7)(B) the following:

(ii)   A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii)  Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

\*\*\*

(v)    Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. . . .

47 U.S.C. § 332(c)(7)(B).

At the outset, the City argues that Wireless's claim is not ripe for review. The City contends that because Wireless has failed to comply with the requirements of the amended ordinance its applications are still pending, and the City has yet to take final action on the applications as is required by 47 U.S.C. § 332(c)(7)(B)(v). Accordingly, the City argues that because "no final action ha[s] been taken, as contemplated by the TCA, prior to a valid cause of action being pursued under that statute, . . . no legal injury could have been sustained by [Wireless] due to the City's alleged inaction." Appellees' Br. at 10.

The City relies on *Nextel Partners Inc. v. Kingston Township*, 286 F.3d 687 (3d Cir. 2002), in support of its argument. However, that case is not on point. There, Nextel brought suit against the township, alleging that the latter had violated the TCA because the ordinance in place "prohibit[ed] the provision of personal wireless service." *Id.* at 690. The plaintiff wanted to construct a wireless communications tower on private property within the township, and had negotiated with the township, but had never filed an application for a building permit.

On appeal, the Third Circuit construed Nextel's complaint as asserting a claim that the township's failure to approve Nextel's proposed facility violated the TCA. The court noted that the language of 47 U.S.C. § 332(c)(7)(B)(v), which "permit[s] an aggrieved party to commence an action to challenge a 'failure to act' must be read in conjunction with" 47 U.S.C. § 332(c)(7)(B)(iii), which "requir[es] state and local governments and instrumentalities to act within a reasonable time on 'any request for authorization to place, construct, or modify [a] personal wireless service facilit[y].'" *Id.* at 692 (citations omitted). Accordingly, the court stated that in order for § 332(c)(7)(B)(v) to be triggered, there must have been a request made as referenced in § 332(c)(7)(B)(iii). The court noted that because Nextel had never filed an application for a building permit with the township, or made any other request for the placement or construction of a wireless facility, the township's failure to approve the facility did not constitute a "failure to act" within the language

of 47 U.S.C. § 332(c)(7)(B)(v). Thus, Nextel's claims under the TCA were not actionable in court. "In the absence of a request to approve the construction of a facility, the failure to approve the facility is not a 'failure to act' within the meaning of this provision." *Id.* Here, by contrast, there is no dispute that Wireless made the appropriate request when it filed its applications with the City. Accordingly, *Nextel* is distinguishable.[5] Even if there was no action upon Wireless's applications, as the City contends, there was a "failure to act" under § 332(c)(7)(B)(v) satisfying ripeness concerns.

The district court found that the City had violated the TCA by failing to act on Wireless's filed applications, as the TCA mandates that such requests be acted on "within a reasonable period of time after the request is duly filed." 47 U.S.C. § 332(c)(7)(B)(ii). Because the district court concluded that the City neither denied Wireless's applications nor took any action on the applications during the nine months that passed after the lifting of the moratorium and before the lawsuit was filed, the court deemed this inaction a violation of both the TCA's timing and writing requirements. *See* 47 U.S.C. § 332(c)(7)(B)(ii-iii). Citing *New Par v. City of Saginaw* for the proposition "that injunctive relief is an appropriate remedy for such violations," 301 F.3d at 399, the district court ordered the City to act upon Wireless's applications within sixty days of the judgment.

Under the circumstances of this case, we conclude that the City's actions during the nine months following the expiration of the moratorium amounted not simply to a failure to act but rather constituted a functional denial of Wireless's applications. As Mayo, the City employee in charge of processing permit applications, stated in his deposition, it was not the City's practice to comply with the substantive and procedural mandates of the TCA when it determined that an application ought to be denied. Instead when the City received an application which Mayo believed did not comply with the City's regulations, his practice was to telephone the applicant and inform the applicant of the defects in the application. J.A. at 108 (Mayo Dep. at 52). Mayo would then hold the application until the applicant submitted the necessary amendments to bring the application into compliance with City regulations. J.A. at 105 (Mayo Dep. at 38). If the applicant did not amend his application within a several-year period, Mayo would discard the faulty application. *Id.* A formal denial of the permit application, as required by the TCA, would never occur.

This is exactly the procedure adhered to by the City when it reviewed Wireless's permit applications. Following the passage of the City's new regulations and the expiration of the City's moratorium, Mayo telephoned Wireless and informed Wireless that its applications did not comply with the new ordinance. J.A. at 104 (Mayo Dep. at 37). Mayo also informed Wireless of the changes that would need to be made to the applications in order for permits to be granted and indicated that no further action would be taken on the applications unless these changes were made. J.A. at 104-105 (Mayo Dep. at 37-38). Consistent with Mayo's statements to Wireless, no further action was taken by the City on Wireless's applications in the nine months following the expiration of the moratorium.

These actions by the City constituted an informal denial of Wireless's applications. Mayo's telephone call informed Wireless that its applications, absent amendment, would not be granted. Following this telephone call, no written decision as to the status of Wireless's applications was provided by the City. While such an informal procedure might be sufficient in another context under state law, such a procedure directly contravenes the substantive and procedural requirements of the TCA.

The TCA does not preempt all authority of state or local governments over the regulation of wireless towers. *See* 47 U.S.C. § 332(c)(7)(A). Instead, it merely imposes several substantive and procedural requirements upon the state or local government's consideration of permit applications. *See generally* 47

---

[5]The City also relies on *APT Tampa/Orlando, Inc. v. Orange County & Bd. of Comm'rs,* No. 97-891-CIV-ORL-22, 1997 WL 33320573 (M.D. Fla. Dec. 10, 1997). However, again, in that case, the court determined that in order for there to have been a final action or failure to act such that 47 U.S.C. § 332(c)(7)(B)(v) would be implicated, the plaintiffs in the case had to have applied for a tower permit. Absent an application for a permit, their "claims [were] not yet ripe." *Id.* at *4. Accordingly, that case has no application to the present controversy.

U.S.C. § 332(c)(7)(B). Among those requirements, the TCA mandates that the state or local governments: (1) act on any permit application "within a reasonable period of time after" the application is filed; and (2) provide a decision on the application "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(ii)-(iii).

We agree with the district court's assessment that the City's informal decision-making process violated the mandates of the TCA. Because we conclude, however, that an informal denial was issued by the City, we disagree with the district court as to the provisions of the TCA that were violated by the City's actions. First, we conclude that City's decision violated the TCA requirement that a decision be "in writing." 47 U.S.C. § 332(c)(7)(B)(ii). We have held that for a decision to meet the "in writing" requirement, the written denial must: "(1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons." *New Par*, 301 F.3d at 395-396. The City's rejection of Wireless's applications did not meet the "in writing" requirement for the simple reason that no written documentation of the City's decision was ever provided to Wireless. Instead, Wireless merely received a telephone call indicating that its applications were not in compliance with the City's regulations.

Additionally we conclude, unlike the district court, that the City's decision violated the TCA's requirement that a decision to deny a permit application must be "supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *New Par*, 301 F.3d at 396 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In this case, the City provided no written record supporting its decision to deny Wireless's application. Given that the City failed to provide written documentation in support of its decision, we must conclude that the City's decision was not supported by substantial evidence, in violation of the TCA.

Having determined that the City's informal denial of Wireless's applications violated the TCA's requirements that such decisions be "in writing" and "supported by substantial evidence," we must now determine what is the appropriate relief for such a violation. *See* 47 U.S.C. § 332(c)(7)(B)(v). We agree with the district court that, pursuant to *New Par*, "injunctive relief is an appropriate remedy for [TCA] violations." 301 F.3d at 399. We disagree with the district court, however, as to the nature of appropriate injunctive relief in this case. The district court concluded that an order requiring the City to act on Wireless's applications within sixty days was the appropriate remedy. This order failed to recognize that the City had already effectively denied Wireless's applications in violation of the TCA. The district court's sixty-day order would therefore only result in the inevitable occurring, namely a reaffirmance of the City's informal decision that the applications ought to be denied under the new regulations. *See New Par*, 301 F.3d at 400 (noting that generally where the defendant has already provided a decision in violation of the TCA, remand would serve no useful purpose). The City has recognized that under the amended zoning ordinances Wireless's applications are inadequate. *See* J.A. at 66 (Answer) (noting that "the proposed site in each [Wireless] application did not and does not meet the setback requirements" in the amended zoning ordinance). Given that the sixty-day order would serve no useful purpose, we conclude that the proper remedy is injunctive relief compelling the City to grant the requested permits.

Although the TCA does not specify a particular remedy for violations of its provisions, *see* 47 U.S.C. § 332(c)(7)(B)(v), we have repeatedly concluded that where the defendant denied a permit application, and that denial violated the TCA's "in writing" and "substantial evidence" requirements, the proper remedy is injunctive relief compelling the defendant to issue the requested permit. *See, e.g., New Par*, 301 F.3d at 399-400; *Telespectrum v. Pub. Serv. Comm'n*, 227 F.3d 414, 419, 424 (6th Cir. 2000); *see also Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1222 (11th Cir. 2002); *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Township*, 181 F.3d 403, 410 (3d Cir. 1999); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999). In *New Par* we recognized that an injunction requiring the issuance of a permit ordinarily is a proper remedy when a governmental body has denied a permit without substantial

evidence supporting the denial. In support of this proposition, we cited numerous cases from various circuits, including *National Tower, LLC v. Plainville Zoning Board of Appeals*, 297 F.3d 14, 21-22 (1st Cir. 2002), which stated that:

> The statutory requirements [of the TCA] that the board act within "a reasonable period of time," and that the reviewing court hear and decide the action "on an expedited basis," indicate that Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another. Instead, in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order, like the one the district court issued in this case, instructing the board to authorize construction.

*Id.* Were we to affirm the district court's order giving the City sixty days to act upon the permit applications, we would subject the parties to further litigation. On remand the City would inevitably again reject Wireless's applications, albeit likely in a formal written decision. *See* J.A. at 66 (Answer) (The City "aver[s] that the applications as submitted would be inadequate to a obtain a building permit under the applicable Zoning Ordinance."). Wireless would then challenge this decision in federal court. Given the Congressional intent embodied in the TCA to avoid multiple rounds of litigation, we conclude that the proper remedy in this case is injunctive relief compelling the City to grant Wireless's permit applications.[6] Given that our past cases such as *New Par* and *Telespectrum* indicate that this is the proper remedy, we conclude that the district court abused its discretion by failing to issue this form of injunctive relief.

## C. § 1983 Claim

As part of its complaint, Wireless asserted a claim pursuant to 42 U.S.C. § 1983. The district court granted the City's motion for summary judgment on this claim on the grounds that the TCA's remedial scheme was sufficiently comprehensive to preclude a § 1983 cause of action. Wireless argues this conclusion was erroneous. Although various courts of appeals have addressed this issue,[7] whether violation of the TCA gives rise to a § 1983 claim remains an open question in this Circuit.

### 1. The *Blessing* Framework

Title 42 U.S.C. § 1983 provides a private right of action against anyone who, under color of state or territorial law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws." The Supreme Court, in *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997), set forth the framework used to determine if a § 1983 claim exists to redress the violation of a federal right. Pursuant to this framework, a plaintiff asserting a § 1983 claim must demonstrate that the statute at issue creates an

---

[6] We are mindful that such a result might be seen as a windfall for Wireless, given that the City has the power under the TCA and Tennessee law generally to alter its regulations. *See* 47 U.S.C. § 332(c)(7)(A) ("Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless facilities."); *Schneider v. Lazarov*, 390 S.W.2d 197, 200 (Tenn. 1965) (noting that under state law the filing of a permit application does not generally "confer[] any right in the applicant or permittee against a change in the zoning ordinance which imposes further limitations"). The City's fatal flaw here was that it failed to issue a written decision supported by substantial evidence. Instead, the City effectively denied Wireless's applications through the City's moratoria and Mayo's telephone call. Under these circumstances, the City must bear the consequences of its failure to comply with the TCA.

[7] *See Abrams v. City of Rancho Palos Verdes*, 354 F.3d 1094 (9th Cir.) (finding § 1983 cause of action), *cert. granted*, 125 S. Ct. 26 (2004); *Primeco Pers. Communications, LP v. City of Mequon*, 352 F.3d 1147, 1151-53 (7th Cir. 2003) (no § 1983 remedy available); *Nextel Partners Inc. v. Kingston Township*, 286 F.3d 687, 693-96 (3d Cir. 2002) (no § 1983 remedy available); *AT&T Wireless PCS, Inc. v. City of Atlanta*, 210 F.3d 1322, *vacated on other grounds*, 223 F.3d 1324 (11th Cir. 2000) (concluding § 1983 remedy available).

enforceable right as that language is used in § 1983.[8] *Id.* If the plaintiff succeeds in demonstrating "that a federal statute creates an individual right," this gives rise to a "rebuttable presumption that the right is enforceable under § 1983." *Id.* at 341. The burden then shifts to the defendant to show that Congress explicitly or implicitly precluded a remedy under § 1983. *Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423 (1987). This can be demonstrated where Congress has acted expressly "by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 520 U.S. at 341. It is important to note that "[t]he availability of administrative mechanisms to protect the plaintiff's interests is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy. Rather, the statutory framework must be such that '[a]llowing a plaintiff' to bring a § 1983 action 'would be inconsistent with Congress' carefully tailored scheme.'" *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106-07 (1989) (internal citations omitted). Finally, as an overarching principle in making this determination, "'[w]e do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." *Wright*, 479 U.S. at 423-24 (quoting *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)).

The parties do not dispute that the TCA grants enforceable rights. Accordingly, our inquiry focuses solely on whether the City has met its burden by demonstrating that Congress intended to foreclose a § 1983 remedy. Because Congress did not explicitly foreclose such a remedy in the TCA itself, we must determine whether Congress did so implicitly. Under this framework, we conclude that Congress did not impliedly foreclose a remedy pursuant to § 1983.

## 2. The TCA

We do not believe the TCA's remedial scheme is sufficiently comprehensive to evidence Congress's intent to foreclose a § 1983 remedy. The TCA was enacted to "encourage the rapid deployment of new telecommunications technologies." Pub.L. No. 104-104, 110 Stat. 56, 56 (1996). In order to promote this purpose, state and local governments must "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed." 47 U.S.C. § 332(c)(7)(B)(ii). A denial of such a request must be "supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Finally, anyone "adversely affected by any final action or failure to act" may file suit in court within thirty days.[9] 47 U.S.C. § 332(c)(7)(B)(v). Suits that are filed must be "hear[d] and decide[d] . . . on an expedited basis." *Id.* This, in essence, is the sum of the relief aggrieved parties may obtain for a statutory violation. They must bring their suit in court within the thirty-day statute of limitations, where they are entitled to expedited judicial review. "Thus, the TCA does not explicitly provide for any types of remedies such as damages, injunctions, attorney's fees, or costs." *Abrams v. City of Rancho Palos Verdes*, 354 F.3d 1094, 1097 (9th Cir.), *cert. granted*, 125 S. Ct.

---

[8] As the Supreme Court noted in *Blessing*:

We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing*, 520 U.S. at 340-41 (internal citations omitted).

[9] 47 U.S.C. § 332(c)(7)(B)(v) also permits parties to petition the Federal Communications Commission ("FCC") for relief. A party may only petition the FCC for relief, however, where the party believe that the state or local government has violated 47 U.S.C. § 332(c)(7)(B)(iv). This provision is only applicable when the state or local government has attempted to restrict "the placement, construction, [or] modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions [when] such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). Like the other remedies provided for by the TCA, this provision is a narrow procedural provision which does not indicate that Congress intended to foreclose a § 1983 remedy.

26 (2004). Accordingly, the Act provides only limited "procedural rights." *Id.* We do not believe that these narrow procedural provisions are so comprehensive as to foreclose a § 1983 remedy.

We are aided in reaching this conclusion by focusing on other statutory schemes that the Supreme Court has evaluated in determining whether a § 1983 remedy exists. For example, in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 13 (1981), the Court found both the Federal Water Pollution Control Act and the Marine Protection, Research and Sanctuaries Act of 1972 "contain unusually elaborate enforcement provisions," thereby foreclosing the possibility of § 1983 liability. Specifically, the statutes provided for civil suits and penalties, criminal penalties, injunctive relief, litigation costs, as well as suspensions or revocations of permits. *See* 33 U.S.C. §§ 1319, 1365, 1415. The Court concluded that in light of all of these provisions, "Congress provided precisely the remedies it considered appropriate," and therefore "it c[ould] not be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under [the statutes]." *Sea Clammers*, 453 U.S. at 14-15.

In contrast, in *Wright*, 479 U.S. at 424-25, the Court found the remedial scheme authorized in the Housing Act not sufficiently comprehensive to imply that Congress intended to preclude a § 1983 remedy. Distinguishing *Sea Clammers*, the Court in *Wright* noted the limited private remedies under the Housing Act, consisting of local grievance procedures, and the absence of a sufficiently comprehensive or effective remedial mechanism. The same result was reached in *Blessing*, 520 U.S. 329, where the Court concluded that the enforcement scheme set forth for Title IV-D of the Social Security Act was "far more limited than [that] in *Sea Clammers*" because "Title IV-D contain[ed] no private remedy — either judicial or administrative — through which aggrieved persons c[ould] seek redress." *Blessing*, 520 U.S. at 348.

When these cases are contrasted with the present situation, it is clear that the TCA's statutory scheme does not suggest that Congress intended to shut the door on a § 1983 remedy.[10] All that an adversely affected party may do under the TCA to obtain relief is to file suit within thirty days and receive expedited judicial review. "While one may argue that the lack of any damages in the TCA is evidence that Congress impliedly intended to foreclose damages, a better justification for the absence of a remedial provision is that Congress intended to preserve an aggrieved plaintiff's right to invoke § 1983." *Abrams*, 354 F.3d at 1098. It would be inconsistent with the language of the statute and Congressional intent to characterize the TCA as providing for a "comprehensive remedial scheme." Accordingly, we conclude that Congress did not implicitly foreclose a § 1983 remedy.

Although the Third Circuit reached the opposite result in *Nextel Partners*, 286 F.3d 687, we agree with the Ninth Circuit's explanation as to why the *Nextel* court's conclusion was "flawed." *Abrams*, 354 F.3d at 1099. Specifically, we reject the Third Circuit's characterization of the TCA's remedial scheme as one that "incorporate[s] [] notable benefits." *Nextel Partners*, 286 F.3d at 694. As the *Abrams* court stated, characterizing a thirty-day statute of limitations as working a benefit to a plaintiff is simply not plausible. 354 F.3d at 1099. In addition, we agree that because the TCA's scheme is made up of "*procedural*, rather than *remedial*, provisions," it is compatible with the remedies available under § 1983. *Id.* This demonstrates that the TCA's statutory framework should not be viewed as evidence that Congress intended to preclude a § 1983 action.

---

[10]There has been much debate as to the role of the TCA's general savings clause in determining whether Congress intended to foreclose a § 1983 remedy. *See, e.g., AT&T Wireless PCS, Inc.,* 210 F.3d at 1328 (finding that the language of the savings clause "clearly forbid[s]" the court from construing the TCA to foreclose a § 1983 remedy); *Abrams,* 354 F.3d at 1100-1101 (same); *but see Nextel Partners Inc.*, 286 F.3d at 696 ("[O]ur holding in this case — that the relevant provision of the TCA does not create a right that is enforceable under § 1983 — does not mean that the TCA in any way modified, impaired, or super[s]eded § 1983."). We need not address whether, as *Abrams* suggests, the language of the savings clause prohibits us from interpreting the TCA to foreclose a § 1983 remedy. We believe that it is determinative that the TCA's remedial scheme is not so comprehensive as to suggest that Congress intended to foreclose a § 1983 remedy.

In sum, because we believe the TCA demonstrates by its insufficient remedial scheme that Congress did not intend to preclude a § 1983 remedy, we reverse the district court's grant of summary judgment to the City on this issue.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's sixty-day order and **REMAND** so that the district court can issue appropriate injunctive relief ordering the City to grant Wireless the requested permits. Because we conclude that a § 1983 remedy is available for violations of the TCA, we **REVERSE** the district court's grant of summary judgment to the City on this issue and **REMAND** the case to the district court for further proceedings consistent with this opinion.